Mary Janice Lintner, Louisville, KY, for appellant.

Michael R. Slaughter, Louisville, KY, for appellee.

Before MOORE and THOMPSON, Judges; HENRY,[1] Senior Judge.

Cheryl KOERNER

v.

William KOERNER.

No. 2008–CA–000080–ME.

Court of Appeals of Kentucky.

Oct. 17, 2008.

*OPINION*

THOMPSON, Judge.

This is an appeal from an order of the Oldham Family Court modifying a Georgia child support decree. Cheryl Koerner alleges that the family court lacked jurisdiction over the subject matter and that, if it had jurisdiction, there was no material change in circumstances warranting the modification. We conclude that the family court lacked jurisdiction to modify the Georgia child support decree pursuant to the Uniform Interstate Family Support Act (UIFSA) and reverse.

At the time of the dissolution of their marriage in 2000, Cheryl Koerner, William (Bill) Koerner and their two minor children resided in Georgia. The Superior Court of Dawson County, Georgia, entered a final judgment and decree of divorce in which Cheryl and Bill were awarded joint custody of the children with Cheryl having primary physical custody. Based on the income of the parties, Bill was ordered to pay child support in the greater amount of

---

1. Senior Judge Michael L. Henry sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

no less than $1,500 per month or 23 percent of his gross income.

In 2003, Cheryl and the children moved to Kentucky. Soon after their move, Bill filed a motion in Georgia requesting a modification of custody. The Georgia court found that there was no material and substantial change of circumstances justifying modification and denied the motion.

On June 14, 2006, Bill, who remained a Georgia resident, filed a motion in the Oldham Family Court requesting that primary physical custody of the oldest child be changed from Cheryl to him. The motion was accompanied by a "Notice and Affidavit of Foreign Judgment Registration," properly certified copies of the orders of the Superior Court of Dawson County, Georgia, and an "Act of Congress Letter" from the clerk of Dawson County, Georgia.

In July, Bill filed a motion for modification of child support alleging that the application of the Kentucky child support guidelines would result in a 15 percent change in the amount of support due, which he cited as a material change in circumstances. Kentucky Revised Statutes (KRS) 403.213(2).

Following discovery and four hearings, the family court denied an immediate modification of custody but ordered that the oldest child reside with Bill during the summer of 2007, subject to further modification at the end of that summer. On August 10, 2007, primary residential custody was transferred to Bill. Cheryl timely filed a Kentucky Rules of Civil Procedure (CR) 59 motion to alter, amend or vacate the order.

One week after the order modifying the custody decree and, before Cheryl's CR 59 motion was ruled upon, Bill filed a motion to modify the child support paid to Cheryl on the basis that the Georgia decree was premised on both children being in Cheryl's custody, so that the transfer of residential custody of the oldest child to him was a change in circumstances that justified modification.

Subsequently, the family court granted Cheryl's CR 59 motion and returned the oldest child to Cheryl's primary residential custodianship. The court directed that the parties submit memoranda addressing Bill's motions for modification of child support. Bill argued that for the ten weeks during which the oldest child resided with him, he should receive a credit of $2,654.80 against the child support paid and that pursuant to the Kentucky child support guidelines his child support should be reduced to $1,122.41 per month.

Cheryl opposed the modification on the basis that the family court lacked jurisdiction under KRS Chapter 407 et seq. Furthermore, she contended that since there was no final modification of the parenting schedule, the family court's order was not a sufficient basis on which to find a change in circumstances. The family court disagreed with both contentions and reduced Bill's child support to $1,122.41 per month and found that he was entitled to a credit of $2,654.80. The reduction was based on Bill's income of $98,925 per year and Cheryl's income of $39,000 per year and the corresponding amount set forth in KRS 403.212.

Our initial inquiry is into the application of KRS Chapter 407 et seq., and its jurisdictional requirements. KRS Chapter 407, enacted in 1998, is modeled after the UIFSA and was adopted as a result of the Personal Responsibility and Work Opportunity Reconciliation Act passed by the United States Congress. In an effort to have uniformity among the states in the application of jurisdictional prerequisites to the enforcement of spousal and child support orders, Congress required that all

states enact statutes substantially similar to the UIFSA by January 1, 1998, as a condition to receiving certain federal funds. The purpose of the UIFSA was concisely stated in *Gibson v. Gibson,* 211 S.W.3d 601, 606 (Ky.App.2006):

> In replacing the Uniform Reciprocal Enforcement of Support Act (URESA), the UIFSA brought changes to child support enforcement by expanding personal jurisdiction over non-resident obligors … and eventually creating a single-order system that applies nationally. The primary purpose of [the] UIFSA was to eliminate multiple and inconsistent support orders by establishing a principle of having only one controlling order in effect at any one time. This principle was implemented by a definitional concept called continuing, exclusive jurisdiction, under which the state that issues the support order (the issuing state) retains exclusive jurisdiction over the order, until specified conditions occur which provide a basis for jurisdiction in another state. (internal quotations and footnotes omitted).

To further its purpose of ensuring a system where only one support order is in effect at any one time, the UIFSA dictates the circumstances under which the tribunal can assert personal and subject matter jurisdiction. Pertinent to our present discussion, in addition to expanding personal jurisdiction over nonresident obligors, the Act obligates states to enforce child support orders issued by another state and imposes limitations on a state's authority to modify child support orders from another state.

**Bill voluntarily submitted to personal jurisdiction of the Kentucky court.** The present controversy concerns subject matter jurisdiction. Subject matter jurisdiction "is not for a court to 'take,' 'assume' or 'allow.' " *Nordike v. Nordike,* 231 S.W.3d 733, 738 (Ky.2007). It either exists or it does not. In this case, it can exist only if conferred by the UIFSA. Whether the Oldham Family Court had the authority to modify the Georgia decree requires an interpretation of the applicable provisions of the UIFSA and, therefore, is a question of law subject to *de novo* review. *Revenue Cabinet v. Comcast Cablevision of South,* 147 S.W.3d 743 (Ky.App.2003).

At the core of the UIFSA is the concept that the state that issued the child support decree or order retains "continuing, exclusive jurisdiction" unless one of the delineated exceptions are met. Its pervasive presence throughout the Act is exemplified by Kentucky's version of the UIFSA that states: "A tribunal of this state shall recognize the continuing, exclusive jurisdiction of a tribunal of another state which has issued a child support order pursuant to a law substantially similar to KRS 407.5101 to 407.5902." KRS 407.5205(4). Like Kentucky, Georgia enacted its version of the UIFSA which is similar to that adopted by Kentucky. O.C.G.A. § 19–11–100 et seq.

Modification of a child support decree is addressed in article six of the UIFSA codified in KRS 407.5601–407.5701, and is entitled "Enforcement and Modification of Support Order After Registration." It provides the "bright line" rules that must be met before a court can modify an existing child support order. *Linn v. Delaware Child Support Enforcement,* 736 A.2d 954, 963 (Del.Supr.1999). The requirements are concisely set forth and leave no opportunity for variance or judicial discretion. Prefatory to the conditions which must be met prior to the assertion of subject matter jurisdiction, the statute provides an explicit directive: a child support order issued in another state and registered in this state may be modified by a responding tribunal of this state only if KRS 407.5613

does not apply and, if after notice and hearing, it finds that conditions for modification established in KRS 407.5611(1)(a) are met. KRS 407.5611(1).

Although Kentucky appellate courts have had few opportunities to address the UIFSA, the rudimentary distinction between registration of a child support decree for the purpose of its enforcement and modification of the decree was addressed in *Nordike,* where the court stressed that the Act limits the authority of a court to act after a child support decree has been issued in another state. "The available options are (1) registration and enforcement of a decree as it exists, KRS 407.5201–.5608, and (2) registration and modification of the decree, KRS 407.5609–.5614." *Id.* at 738.

In *Gibson,* 211 S.W.3d 601, the court reaffirmed the distinction between enforcement jurisdiction and modification jurisdiction. Although enforcement of a child support decree and modification require that the decree be registered in the foreign state, the Act imposes additional requirements before the court has authority to modify an existing child support decree. *Id.* at 610. Thus, Bill's proper registration of the child support decree in Kentucky did not axiomatically confer jurisdiction in the Oldham Family Court to modify the decree. To hold otherwise would ignore the basic concept of the continuing, exclusive jurisdiction of the Georgia court. Our discussion then must focus on the requirements of KRS 407.5611 and KRS 407.5613.

KRS 407.5613 provides that jurisdiction to modify a child support order of another state exists if "all of the parties who are individuals reside in this state and the child does not reside in the issuing state...." Because Bill remains a Geor-

gia resident, KRS 407.5613 has no application. Therefore, Kentucky's jurisdiction to modify the decree must be conferred by KRS 407.5611.

In relevant part, that statute provides:

(1) After a child support order issued in another state has been registered in this state, the responding tribunal of this state may modify that order only if KRS 407.5613 does not apply and if after notice and hearing it finds that:

(a) The following requirements are met:

1. The child, the individual obligee, and the obligor do not reside in the issuing state;

2. A petitioner who is a nonresident of this state seeks modification; and

3. The respondent is subject to the personal jurisdiction of the tribunal of this state; or

(b) The child, or a party who is an individual, is subject to the personal jurisdiction of the tribunal of this state and all of the parties who are individuals have filed written consent with the issuing tribunal for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction over the order. However, if the issuing state is a foreign jurisdiction that has not enacted a law or established procedures substantially similar to the procedures under this chapter, the consent otherwise required of an individual residing in this state is not required for the tribunal to assume jurisdiction to modify the child support order.[2]

---

**2.** The UIFSA was amended in 2001. However, the prefatory note of the 2001 UIFSA explains that the amendments do not make fundamental changes in the policies and procedures previously published. *See Draper v. Burke,* 450 Mass. 676, 881 N.E.2d 122 (2008).

Although Kentucky caselaw is scant, because the UIFSA is a uniform act, the treatises and authorities from other states are persuasive. It has been uniformly held that pursuant to statutes similar to KRS 407.5611, if the obligor or obligee remains a resident of the issuing state and no written consent is filed as required by statute, that state retains continuing, exclusive jurisdiction to modify its child support decree.

In *Tate v. Fenwick*, 766 N.E.2d 423 (Ind.App.2002), the court held that Indiana was without jurisdiction to modify a child support order when the obligor continued to reside in Kentucky, the issuing state. Reaching the same result, in *Watkins v. Watkins*, 802 So.2d 145 (Miss.Ct.App. 2001), the court denied jurisdiction because the mother continued to live in Georgia which had continuing, exclusive jurisdiction. Likewise, in *Peddar v. Peddar*, 43 Mass.App.Ct. 192, 683 N.E.2d 1045 (1997), the court held that Massachusetts lacked jurisdiction to modify a Georgia child support order when the father continued to reside in Georgia. These cases represent but a sample of the plethora of states that have denied jurisdiction on facts similar to the present. *See generally*, Kurtis A. Kemper, J.D., Annotation, *Construction and Application of the Uniform Interstate Family Support Act*, 90 A.L.R.5th 1 (2001). We now join those states that have concluded that under the UIFSA, the issuing state has continuing, exclusive jurisdiction over its child support order if the obligor or the obligee continues to reside in that state. Thus, the Oldham Family Court had no jurisdiction to modify the Georgia child support decree.

We are cognizant that our decision results in bifurcated jurisdiction between Kentucky, which has jurisdiction over custody and visitation matters, and Georgia, which has jurisdiction over child support modification. As we explained in *Wallace v. Wallace*, 224 S.W.3d 587 (Ky.App.2007), custody and visitation issues are governed by the Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act, both of which contain jurisdictional prerequisites distinct from those in the UIFSA. Although arguably not a desired result, one state may retain jurisdiction to modify child support while another obtains subject matter jurisdiction over child custody and visitation. *See Straight v. Straight*, 195 S.W.3d 461 (Mo.App. W.D. 2006). Critical of this result, a Texas court was nevertheless compelled to follow the UIFSA:

> By adopting these uniform acts, the legislature has created an unsatisfactory situation in which a suit affecting a parent-child relationship is severed into parallel proceedings in different states. However, any remedy for this awkward result must come from the legislature, not the courts.

*In re Hattenbach*, 999 S.W.2d 636, 639 (Tex.App.-Waco, 1999). With the same reservations, we hold that Kentucky did not have jurisdiction to modify the Georgia child support decree.

Based on the foregoing, the order modifying the Georgia child support decree is vacated.

ALL CONCUR.